# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FEDERAL EXPRESS CORPORATION,
a New Mexico foreign corporation, and
SENTRY INSURANCE COMPANY, INC.,
a foreign corporation doing business in
New Mexico,

        Plaintiffs,

vs.                                             Civil 01-227 WJ/DJS-**ACE**

THE UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiffs' Motion in Limine Regarding Application of Tribal law, filed August 12, 2002 (**Doc. 53**). This action is a medical malpractice claim in which Plaintiffs are suing the United States for subrogation and indemnification for a sum paid out in settlement. Having considered the parties' briefs and the applicable law, I find that Plaintiffs' motion is not well-taken and will be denied.

Ms. Annie Morris was struck down by a Federal Express truck in a shopping center parking lot and died as a result. After the accident, Ms. Morris was taken to the Crownpoint Health Care Facility ("CHCF") where she was treated. Plaintiffs contend that employees at CHCF, which is operated by the Indian Health Service ("IHS"), should have been able to stabilize Ms. Morris to permit her transfer to another facility capable of caring for her injuries. Parties do not dispute that CHCF is located on Indian territory.[1]

---

[1] The facility is located within Navajo Nation reservation and held by the United States in trust for the Navajo Nation. *See Exhibits to Pltff's Mot.*

*Whether Tribal Law Applies*

Plaintiffs seek to have the Court apply Navajo Tribal law to its claim brought under the Federal Tort Claims Act ("FTCA"), instead of New Mexico state law, based on the wording in the statute:

> . . . [T]he district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (emphasis added). In support of their position, Plaintiffs rely on their interpretation of the statutory language, and one published District of New Mexico opinion, *Cheromiah v. U.S.*, which held that Acomo trial law applied under § 1346(b) as the "law of the place" where the act of omission occurred. 55 F.Supp.2d 1295 (D.N.M. 1999). Plaintiff points out that *Cheromiah* was followed by the Fourth Circuit in *Williams v. U.S.*, 1999 WL 33320440 (W.D.N.C. 2001). However, although the *Williams* court found that Cherokee law governed the FTCA claim, on appeal it was noted that because there was no tribal law applicable to the provision of emergency medical treatment, any tribal resolution would look to "applicable federal and North Carolina law." The court, therefore, did not need to ultimately determine whether tribal law, and not state law, "constituted the applicable law of the place." *Williams v. U.S.*, 242 F.3d 169, 175, n.2 (4th Cir. 2001) (*"Williams II"*).[2] At the same time, *Williams II* acknowledged that another District of New Mexico case had reached a conclusion opposite to the one reached in *Cheromiah*, citing *Louis v. U.S.*, 54 F.Supp.2d 1207, 1210 (D.N.M. 1999) (under New Mexico

---

[2] The claim in the *Williams* case was based on a federal statutory duty, under the Emergency Medical Treatment and Active labor Act (EMTALA), for which the court found sovereign immunity under the FTCA was not waived.

2

choice of law principles, New Mexico law rather than Indian law applied to medical malpractice claim brought by Indian against the United States under the Federal Torts Claims Act where alleged acts of negligence occurred at IHS facility on Acoma Pueblo). *See also Bryant v. U.S.*, 147 F.Supp.2d 953 (D.Ariz., 2000) (finding reasoning in *Cheromiah* unpersuasive, and holding that the substantive law of New Mexico applied where acts causing injury occurred on tribal land located within the State of New Mexico).

Plaintiffs ignore the overwhelming load of case law that has interpreted the term "law of the place" to refer to the substantive law of the state in which the tort occurred. *See, e.g., Molzof v. United States*, 502 U.S. 301, ---- - ----, 112 S.Ct. 711, 714-15, (1992) (while liability issues are determined by *state law*, meaning of term employed in FTCA "is by definition a federal question") (emphasis supplied), *appealed after remand on other grds.*, 6 F.3d 461 (7th Cir., Sept., 1993); *Franklin v. U.S.*, 992 F.2d 1492, 1495 (10th Cir. 1993) (questions of liability under the FTCA are resolved in accordance with the law of the state where the alleged tortious activity took place); *Flynn v. United States*, 902 F.2d 1524, 1527 (10th Cir.1990) (FTCA makes the United States liable on tort claims under circumstances in which a private individual would be liable under *state law*) (emphasis added); *Brown v. U. S*., 653 F.2d 196, 200 (5th Cir. 1981), *cert. denied*, 456 U.S. 925 (1982) ("law of the place" refers exclusively to state law); *Kruchten v. U.S.*, 914 F.2d 1106 (8th Cir. 1990) (law of state in which alleged tort occurred governs all substantive issues in FTCA case); *Ochran v. U.S.*, 273 F.3d 1315 (11th Cir. 2001) (distinguishing between application of state law or federal law); *Delta Savings Bank et al. v. U.S*., 265 F.3d 1017, 1024 (9th Cir. 2001) (noting that Supreme Court has consistently held that the FTCA's reference to the "law of the place" means law of the State for the source of substantive liability under the FTCA) (citing *FDIC v. Meyer*, 510 U.S. 471, 475-79 (1994)); *accord, Fresquez v. U.S.*, 788 F.Supp. 469 (D.Colo.

1992); *O'Neal v. Department of Army*, 852 F.Supp. 327 (M.D.Pa. 1994); *Rose v. U.S.*, 929 F.Supp. 305 (N.D.Ill. 1996);*Walton v. U.S.*, 770 F.Supp. (D.Mass.1991).

Further, even if tribal jurisdiction concurrently extends to the claim at hand, the mere existence of jurisdiction is not determinative in deciding what "law of the place" applies. Rather, the inquiry ends where it is determined the negligence occurred. *E.g., Hess v. U.S.*, 361 U.S. 314 (1960) (in claim over wrongful act causing death where controversy was within reach of admiralty jurisdiction, Oregon state law and not maritime law, would apply in claim brought under FTCA, even though Oregon would be required to apply admiralty law in a tort action between private parties); *Seyler v. U.S.*, 832 F.2d 120 (9th Cir. 1987) (applying Idaho recreational use statute in FTCA suit involving motorcycle accident that occurred on road maintained by the Bureau of Indian Affairs (BIA)); *Bryant v. U.S*. 565 F.2d 650, 652-53 (10th Cir. 1977) (issue not discussed, but applying NM law to FTCA action alleging negligence at BIA-run school on Indian reservation); *Brock v. U. S.*, 601 F.2d 976 (9th Cir. 1979) (phrase "law of place where act or omission occurred" means law of state in which negligence occurred in case of act which occurs in area in which two states exercise concurrent jurisdiction).

Plaintiff's analysis of the issue under *Montana v. U.S.*, 450 U.S. 544 (1981), which addresses a tribe's civil authority over non-Indians misses the big picture. It works only if one assumes the United States Government is a private person. Given the strict construction afforded sovereign immunity provisions, *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981), this Court declines to accept such an assumption. Therefore, Plaintiff's motion regarding the application of tribal law to this case will be denied.

*NMMMA Damages Cap*

Plaintiff argues in the alternative that if New Mexico law applies, then the liability cap set

out in the New Mexico Medical Malpractice Act, N.M.S.A. § 41-5-6 ("Medical Malpractice Act") is unconstitutional. The Act limits certain types of monetary relief for medical malpractice claims. Plaintiff argues that the cap violates the New Mexico Constitution. In support of its position, Defendant relies on *Trujillo v. City of Albuquerque et al.*, 125 N.M. 721 (1998) (*Trujillo II*), which I find to be instructive as well as dispositive in the guidance it provides on the issue.

*Trujillo II* held that the rational basis level of scrutiny should be applied to an equal protection challenge to the damages cap in the New Mexico Tort Claims Act ("TCA"). The critical part of this holding is that the New Mexico Supreme Court further held that the rational basis would be the "constitutional test applied to cap challenges of this nature from this point forward." 125 N.M. at 723.[3] Plaintiff's constitutional challenge to the Medical Malpractice Act comes under this category of challenges, both in the sense of the type of challenge and the nature of the cap set forth in the Medical Malpractice Act.

Social and economic legislation is generally considered presumptively valid. *Trujillo II*, 125 N.M. at 726 (citation omitted). Under the rational basis test, a plaintiff is required to show that the statute's classification is not rationally related to the legislative goal.[4] The cap in the Medical Malpractice Act does not include "punitive damages and medical care and related benefits." § 41-5-6(A) & (B). Victims of medical malpractice may still recover for acts of negligence egregious enough to warrant punitive damages or entail costly medical care. As noted

---

[3] *Trujillo II* reversed *Trujillo v. City of Albuquerque*, 110 N.M. 621 (1990) which had applied an intermediate level of scrutiny to the damages cap in the New Mexico Tort Claims Act.

[4] This standard tracks the federal standard. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 462 (1988) (challenged statute must bear only a rational relationship to a legitimate governmental purpose); *cited in Romer v. Evans et al*, 517 U.S. 620, 635 (1996).

in *Cummings v. X-Ray Assoc. of N.M., P.C.*, 121 N.M. 821 (1996),[5] the Medical Malpractice Act achieves "the legislative purposes of assuring that health providers are adequately insured so that patients may be reasonably compensated for their malpractice injuries." 121 N.M. at 830. The analysis in a recent New Mexico Court of Appeals case, *Godwin et al v. Memorial Med'l Center*, echoed a similar legislative rationale in finding that the damages cap in the Tort Claims Act applied to the Emergency Medical Treatment and Active Labor Act (EMTALA"): a "concern about recoveries against healthcare providers." 130 N.M. 434, 443 (Ct.App.), *cert. granted,* No. 26,919 (June 4, 2001).

Plaintiff completely overlooks *Trujillo II* and offers no reason why the Court should not follow its roadmap. Instead, Plaintiff offers an unpublished state district court order, *Morrow v. Reddy*, No. 99-23-CV, slip. op. (Eighth Jud. Dist. Ct. Union County, N.M.) which contains a finding that the damages cap in the Medical Malpractice Act was arbitrary and capricious, and violated the plaintiff's federal and state constitutional guaranties to equal protection and due process. *Pltff's Ex. D*.[6] This Court is not bound by *Morrow*, nor is it persuaded by its reasoning, particularly given the outcomes in *Godwin* and *Cummings*.[7] Plaintiff also offers *Schlieter v.*

---

[5] *Cummings* involved constitutional challenges to the three-year limitations period in the Malpractice Act. The court found that the provision was supported by rational basis, and did not violate equal protection clause or a plaintiff's right to access to courts. Additionally, the *Cummings* decision predated *Trujillo II*, and pointed the way toward a rational basis analysis for this type of challenge, noting that a malpractice claim did not involve a fundamental right. 1221 N.M. at 832 (a malpractice claim "is an attempt by a patient to obtain something he or she does not yet possess: monetary compensation for an injury caused by the negligence of a health care practitioner").

[6] There appears to be no file-date stamp on the copy of the district court order.

[7] The *Morrow* court's analysis, e.g., acknowledged an inequity between the treatment of medical malpractice victims and victims of other torts. *Ex. D at 1*. Such a distinction, however, can easily be rationalized in meeting the legitimate goal of attempting to corral escalating health care costs that are driven up with unlimited recoveries in malpractice claims.

6

*Carlos*, 108 N.M. 507, 510 (1989) (*per curiam*), which is neutral to Plaintiff's position. In that case, the New Mexico Supreme Court simply declined to accept certification by the federal district court of an equal protection challenge to the damage cap in the Medical Malpractice Act.[8] In light of *Trujillo II*, which has already determined the appropriate standard of review in challenges to caps on damages available in statutes similar to the Tort Claims Act, *Schlieter* offers nothing that would weigh this issue in Plaintiff's favor.[9] In sum, I find that the statute is not arbitrary and capricious in limiting deserving plaintiffs from deserved relief, and that it is rationally related to the legislative goal of ensuring a source of recovery for victims of medical malpractice and curbing runaway costs of healthcare.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion in Limine Regarding Application of Tribal law (**Doc. 53**) is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE

---

[8] The facts had not sufficiently been developed enough to show that there was legitimate and important government purpose involved. 108 N.M. at 509.

[9] I note that although Plaintiff's claim is a state constitutional challenge, my analysis of the issue under a federal constitutional challenge would have the same result. *See, e.g.,*, *Louis*, 54 F.Supp.2d at 1212 (applying Medical Malpractice Act damages cap to FTCA claims).