**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

```
FEDERAL EXPRESS CORPORATION, a
New Mexico foreign corporation,
and SENTRY INSURANCE COMPANY,
INC., a foreign corporation doing
business in New Mexico,

        Plaintiffs,

vs.                                     CIVIL NO. 01-0227 WJ/DJS - ACE

THE UNITED STATES OF AMERICA,

        Defendant.
```

**DEFENDANT'S REQUESTED FINDINGS OF FACT**

    1.    On June 18, 1997, decedent, Annie Morris, was struck and run over by a vehicle being operated by a Federal Express driver in Crownpoint, New Mexico, near Basha's Supermarket.

    2.    The Federal Express vehicle was parked in a no parking zone.  The driver, Jeffrey Deemy, vacated it in order to pick up a package.

    3.    Mr. Deemy did not turn off the ignition, did not take the keys out of the ignition, did not set the parking brake, and did not lock the van, all of which was in violation of Federal Express policy.

    4.    After Mr. Deemy left the van, it started rolling towards Annie Morris and her husband, David Morris, Sr.

    5.    The Federal Express vehicle ran over Annie Morris's

chest and abdomen.

    6.    On June 18, 1997, Annie Morris's husband, was also struck by the same vehicle.

    7.    Mr. and Mrs. Morris were transported to the Crownpoint Healthcare Facility (Crownpoint) for treatment.

    8.    Defendant owned, operated, and managed the Crownpoint facility as an Indian Health Service Hospital open to Native Americans and located in Crownpoint, New Mexico.

    9.    Crownpoint is a rural facility.  It is located approximately 50 miles from Gallup, approximately 90 miles from Shiprock, and approximately 187 miles from Albuquerque.

    10.    Crownpoint has no surgeons or anesthesiologists on staff or available on call.

    11.    Annie Morris arrived at the Crownpoint Healthcare Facility at approximately 1:07 p.m.

    12.    She was attended by Darin Portnoy, M.D., Ann Reitz, M.D., and David Josephs, M.D., all of whom were employees of Defendant and all of whom were family practitioners.

    13.    Annie Morris was on a backboard with a no neck C-collar in place when she arrived.

    14.    Annie Morris was in considerable discomfort, complaining of chest pain and had difficulty breathing.

    15.    On physical examination, Annie Morris had a great deal of chest pain to even mild palpation and was complaining of

shortness of breath.

 16. There was a finding of abdominal distension as well.

 17. Annie Morris had multiple abrasions and contusions, including a deep laceration on her right foot.

 18. Immediate efforts were undertaken to improve her oxygenation with supplemental oxygen via a non-rebreather mask.

 19. Staff at Crownpoint established a large bore IV access and began normal saline fluid infusion.

 20. Full lab studies, an EKG, and a chest X-ray were promptly done.

 21. The chest X-ray disclosed a finding of multiple rib fractures bilaterally and what appeared to be a pulmonary contusion in her right upper lobe.

 22. Ms. Morris had what is termed a "flail chest".

 23. The multiple rib fractures and sternal fracture made breathing difficult for Ms. Morris.  She had what is termed paradoxical breathing, meaning that when she would take in a deep breath, instead of her chest coming out, it went in.

 23. While these studies were being obtained, the University of New Mexico Hospital's (UNMH) emergency room was contacted to arrange an immediate transfer of Annie Morris, as it was recognized that she needed to be transferred.

 24. UNMH, in Albuquerque, is the only Level I Trauma Center in New Mexico.

25. Ms. Morris needed to be treated at a Level I Trauma Center.

26. Arrangements were made for air transport from San Juan Regional Hospital's flight team, Air Care 1, to fly Ms. Morris to Albuquerque, New Mexico.

27. Dr. Portnoy consulted with the attending emergency room physician at the University of New Mexico Hospital concerning the proposed transport.

28. A decision was made by the staff at Crownpoint to intubate Ms. Morris prior to transport.

29. The emergency room physician at the University of New Mexico Hospital concurred with the decision to intubate Ms. Morris prior to transport.

30. The flight team would not have accepted Ms. Morris for transport without a stable airway, i.e., an intubation.

31. The staff at Crownpoint began preparations for intubation.

32. Another IV and Foley catheter were placed to further manage Ms. Morris's volume status and prepare her for transport.

33. Annie Morris's airway had been effectively and appropriately managed up to this point with supplemental oxygen via her mask. However, she was experiencing further signs of respiratory depression, including increasing shortness of breath, somnolence, and less responsiveness.

34. A decision was made to attempt a nasotracheal intubation. The attempt, made by Dr. Reitz, was not successful.

35. Dr. Reitz attempted to endotracheally intubate Ms. Morris. That attempt was also unsuccessful.

36. The transport team had just arrived from Farmington at this time.

37. The staff resumed bagging Ms. Morris.

38. Dr. Portnoy made three sequential attempts at endotracheal intubation and was unsuccessful.

39. A member of the transport team, a flight team paramedic, Paul Moore, also tried to intubate Ms. Morris and was unsuccessful.

40. David Josephs, M.D., another employee of Crownpoint also made at least one, if not two, attempts to intubate Ms. Morris.

41. Dr. Portnoy made one more attempt to intubate Ms. Morris.

42. In their intubation attempts, the Crownpoint staff followed appropriate intubation steps by trying to confirm placement by breath sounds, which were absent.

43. The Crownpoint staff also tried to confirm placement as well by ventilating via the placed tube; there was no chest movement.

44. During this time, bagging/ventilating Ms. Morris with

the bag/mask was becoming more difficult.

45. Ms. Morris became more difficult to ventilate and progressively bradycardic. For her bradycardia, she was given Atropine IV immediately.

46. There was no improvement in Ms. Morris's heart rate, and she become pulseless. A code was called.

47. Dr. Portnoy coordinated ACLS protocols at this time.

48. The code ran for approximately 30 minutes and was finally called at 3:35 p.m. Ms. Morris was pronounced dead at that time.

49. Ms. Morris was critically injured at the time she arrived at the Crownpoint facility.

50. Every appropriate step was taken by staff at Crownpoint to save her life.

51. Attempts at airway management were appropriate and met the applicable standard of care from the time that Ms. Morris arrived at Crownpoint until she was pronounced dead.

52. Progressive difficulty with aeration can be correlated with Ms. Morris's chest injury.

53. Ms. Morris was short in stature (64 inches) and morbidly obese (268 pounds).

54. Ms. Morris had a shortened neck and a great deal of adipose tissue around her neck and fat.

55. Ms. Morris was particularly difficult to intubate due

to her obesity and her neck.

56. In addition, it would have been very difficult to do a successful cricothyroidotomy because of Ms. Morris's body habitus and previous neck surgery.

57. It is more likely than not that a cricothyroidotomy would not have been successful.

58. The severity of Ms. Morris's injuries made it more likely than not that she would die, even if an airway had been established.

59. Even if Ms. Morris had lived, she would have required a prolonged period of mechanical ventilation related to chest stabilization and could have suffered further complications.

60. Given the physiologic consequences of her catastrophic injury, it is more likely than not that Ms. Morris would have developed respiratory distress syndrome, which carries a very fairly high mortality.

61. Dr. Reitz at all times met the applicable standard of care in her care and treatment of Ms. Morris.

62. Dr. Reitz's acts were not negligent.

63. Dr. Portnoy at all times met the applicable standard of care in his care and treatment of Ms. Morris.

64. Dr. Portnoy's acts were not negligent.

65. Dr. Josephs at all times met the applicable standard of care in his care and treatment of Ms. Morris.

66. Dr. Josephs' acts were not negligent.

67. The staff of Crownpoint at all times met the applicable standard of care in their care and treatment of Ms. Morris.

68. The acts of the staff of Crownpoint were not negligent.

69. At all times material, Defendant and its employees possessed and applied the knowledge and used the skill and care ordinarily used by reasonably well-qualified hospitals, clinics, physicians, and other health care providers of the same type and specialty giving due consideration to the locality involved.

70. Ms. Morris's death was as a result of an unavoidable medical complication for which Defendant is not liable.

71. The sole proximate cause of Ms. Morris's death was the negligent acts of the driver of the Federal Express vehicle and/or Federal Express.

72. No acts of the employees of Crownpoint contributed to or enhanced Ms. Morris's injuries.

73. Upon information and belief, Byron P. Morris, James N. Morris, and Davey Morris, Jr., were of the age of majority at the time of Ms. Morris's death.

                                         Respectfully submitted,

                                         DAVID C. IGLESIAS
                                         United States Attorney

                                         *Filed electronically 10/24/02*
                                         PHYLLIS A. DOW
                                         Assistant U.S. Attorney
                                         P.O. Box 607
                                         Albuquerque, New Mexico  87103
                                         (505) 346-7274


**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on October 24, 2002, the foregoing pleading was mailed to the following:

John S. Stiff, Esq.
Stiff & Ford, P.C.
Suite 1300-W, Simms Bldg.
400 Gold,SW
Albuquerque, NM 87102

Robert R. Rothstein
Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg
    & Frye, LLP
P.O. Box 8180
1215 Paseo de Peralta
Santa Fe, NM 87504-8180


                                         */s/ PHYLLIS A. DOW*
                                         PHYLLIS A. DOW
                                         Assistant U.S. Attorney

*N:\PDow\FedEx\findingsfact.wpd*