IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

03 AUG -4 AM 10: 36

FEDERAL EXPRESS CORPORATION,
A New Mexico foreign corporation, and
SENTRY INSURANCE COMPANY, INC.

   Plaintiffs,

v.                                                              No.:   CV 01-227 KBM/ACT

UNITED STATES OF AMERICA,

   Defendant.

### PLAINTIFFS FEDERAL EXPRESS CORPORATION AND SENTRY INSURANCE COMPANY'S CORRECTED AMENDED REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### I.   BACKGROUND

Plaintiffs are suing the United States of America, claiming subrogation or contribution or indemnification as a result of settling the wrongful death claim of the decedent, Annie Morris. Annie Morris was involved in a pedestrian/vehicle collision on June 18, 1997 in Crownpoint, New Mexico. She was subsequently taken to the Crownpoint Indian Healthcare Hospital ("Crownpoint") where she died approximately 2½ hours later. The Plaintiffs settled the wrongful death claim with the Personal Representative of the decedent's estate for $1.8 million dollars, and now seek reimbursement from the United States of America as a successive tortfeasor for the difference between the value of the injuries Annie Morris would have received in the absence of the Defendant's medical negligence, and the amount paid to settle the underlying lawsuit. Since the decedent's injuries as a result of her motor vehicle accident were survivable with appropriate medical care, the measure of the damages sought

by the Plaintiffs is the value of the decedent's life. Plaintiffs brought this suit pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(B), 271 et seq., and timely filed an administrative claim. All administrative remedies were exhausted prior to filing suit.

## II.   FACTS

1. Plaintiffs claims arise from an incident that occurred on June 18, 1997, on the Navajo Indian Reservation in the community of Crownpoint, New Mexico. On that date, a Federal Express vehicle struck Annie Morris. She was taken to the Crownpoint Healthcare Facility (Crownpoint), located 200 yards from the accident scene, within minutes of the incident.

2. The Crownpoint Healthcare Facility is operated by the United States Indian Health Service, which is an agency of the U.S. Department of Health and Human Services.

3. Crownpoint, New Mexico is located within the Navajo Nation Reservation, and the Hospital is on land that is held by the United States in trust for the Navajo Nation. All acts, injuries and damages, forming the basis of the Plaintiffs' claims occurred on land held in trust by the United States for the Navajo Nation. In addition, Annie Morris was an enrolled member of the Navajo Nation.

4. Annie Morris arrived at Crownpoint at 1:07 p.m.. She was awake, alert and oriented as to time, place and person, and remained relatively stable until she was starved of oxygen, and became bradycardic, which eventually led to her death. At the time of her initial presentation, she complained of chest and extremity injuries. She was placed on oxygen by

canula, after being evaluated by the physicians in the Crownpoint emergency department. Dr. Darin Portnoy was the physician in charge of Annie Morris' care, and as such had the ultimate responsibility for the care, diagnosis and treatment of Annie Morris. He examined her, made all decisions relative to her care and treatment, and remained the physician in charge up to the time of her death. He was assisted by Dr. Ann Reitz and Dr. David Josephs, as well as by several nurses.

5. Dr. Portnoy's physical examination revealed that Annie Morris' chest had significant tenderness to palpation and decreased breath sounds, with minimal air movement. Examination of the abdomen showed distended diffuse but mild tenderness without bruising. The patient's initial vital signs showed a pulse of 90, which is normal, a blood pressure of 120/82, which is normal, and a respiratory rate of 28.

6. Diagnostic testing revealed multiple rib fractures, but no pelvic fractures. These x-rays were taken at 1:25 p.m. An EKG taken at 1:21 p.m. revealed a normal sinus rhythm.

7. Other than placing the decedent on oxygen by canula, no attempts were made to aggressively manage her airway until 2:00 p.m. At that time, attempts were made to orally and nasally intubate Mrs. Morris in order to establish an endotracheal airway, preparatory to transporting her to a higher-level trauma center. Over the next hour and one-half, more than 10 attempts were made to intubate Annie Morris. After the first two unsuccessful attempts, Dr. Portnoy administered a paralyzing agent, Succinylcholine. Once the Succinylcholine was

3

administered. Annie Morris could no longer breathe on her own and became dependent upon the establishment of an airway, either by endotracheal tube or a surgical airway. After the unsuccessful intubation attempts at 2:35 p.m. and 2:55 p.m., Mrs. Morris' heart rate slowed into the 40s and she was administered Atropine, a heart stimulant. At 3:02 p.m., the physician in charge believed that the latest intubation attempt was successful, but it was not. From the time this intubation was started, before 3:02 p.m., until the removal of the tube at 3:07 p.m., Mrs. Morris did not receive sufficient oxygen to maintain her vital body systems. Mrs. Morris went into full cardiopulmonary arrest at 3:06 p.m. The endotracheal tube was removed at 3:07 p.m.

    8.    From 3:07 p.m. until Annie Morris was pronounced dead at 3:35 p.m., CPR was performed. At 3:10 p.m., the healthcare personnel at Crownpoint administered more Succinylcholine, and tried again to endotracheally intubate her at 3:13 p.m.

    9.    Annie Morris was pronounced dead at 3:35 p.m. Following the pronouncement of her death, Dr. Ross Zumwalt of the Office of the Medical Investigator performed an autopsy. The autopsy revealed multiple rib fractures and a fracture of the sternum. There was a left lung laceration and about 200cc of blood in the chest cavity. There was 50cc of blood in the abdominal cavity with a superficial spleen laceration and an adrenal gland laceration. There was no injury to the nervous system, brain, neck or heart. Annie Morris' injuries were survivable.

    10.    To a reasonable **degree** of medical probability, Annie Morris would have

survived if an airway had been established.

11. The physicians' actions in treating Annie Morris at Crownpoint were below the standard of care, giving due regard for the locality involved, in practicing emergency department medicine in the United States in 1997. The physicians should have recognized the need for active airway management sooner and failed to attempt a surgical airway by a chricothyrotomy. No more than four attempts at intubation and no more than 15 to 20 minutes should have elapsed before a surgical airway was attempted by chricothyrotomy. Instead, more than ten intubations were attempted, and the physician in charge never considered a surgical airway.

12. The Crownpoint Hospital personnel were trained in chricothyrotomy and tracheostomy. Dr. Portnoy had taken the ATLS course, and had limited privileges to conduct a chricothyrotomy under emergency circumstances, as did Dr. Ann Reitz. Dr. Josephs had full privileges to conduct chricothyrotomies, tracheostomies, and thoracotomies. A chricothyrotomy kit, including all items necessary to perform the procedure, was available in the Crownpoint emergency department.

13. The standard of care required that the physicians attempt a chricothyrotomy or other surgical airway if attempts to intubate were unsuccessful, but instead a surgical airway was not even considered, much less attempted.

14. The intubation attempt at 3:02 p.m. was initially thought to be successful. This tube was removed at 3:07 p.m. According to the records, the misplacement of the tube into

5

the esophagus rather than the trachea was not recognized for at least four minutes, during which time the patient was receiving insufficient oxygen, and led immediately to her cardiac arrest at 3:07 p.m. While failing to place the tube into the trachea is not in and of itself below the standard of care, failure to recognize misplacement is.

15. Despite low oxygen levels and repeated attempts at intubation, Annie Morris remained relatively stable for the first two hours in the emergency department. Even as late as 2:50 p.m. her heart rate was noted to be 86, and at 2:57 p.m. her blood pressure was measured at 149/115. The unsuccessful intubation attempt at 3:02 p.m. assured that neither the heart nor the brain would receive sufficient oxygen for the time the tube was allowed to remain in place. In addition, Mrs. Morris was not receiving sufficient oxygen during the intubation attempt itself, making the time without sufficient oxygen at least five minutes, and possibly more. This time period correlates with Annie Morris' cardiac arrest. To a reasonable degree of medical probability, this period of hypoxia caused the cardiac arrest which led to Annie Morris's death. Annie Morris died as a result of the failure to establish an airway at 3:35 p.m. on June 18, 1997.

16. The failure of the Crownpoint agents and employees to manage and properly treat Annie Morris' condition resulted in a loss of any chance she had to survive her injuries. With proper diagnosis and treatment, her chances of survival were approximately 75% to 80%.

17. Had Annie Morris received proper airway management, she would have had at

6

least a 75% to 80% of surviving the original injuries. By original injuries we mean those injuries with which Annie Morris presented to the emergency room at Crownpoint.

18. Had an airway been successfully established, Annie Morris would have, to a reasonable degree of medical probability, had a prolonged course on a ventilator, perhaps as long as two months, during which time her chest injuries and rib cage would have stabilized. She would have been able to resume normal life and work within six months. Her longterm sequelae would have consisted of some scarring from the surgical airway management, and some chest pain.

19. Had an airway been successfully established, Mrs. Morris would have suffered damages for medical and medically-related care and commodities, lost wages for six months, loss of household services, pain and suffering and emotional distress. The value of Annie Morris' claim, had she received proper airway management and survived, is approximately $250,000.00.

20. As a result of her death, the present value of Annie Morris' lost earning capacity is $263,756.00, with an expected work life expectancy of 9.3 years to age 61, less Federal and state income taxes, Social Security taxes and personal maintenance.

21. As a result of her death, the present value of the lost household services of Annie Morris is at least $471,403.00 to her life expectancy of age 82.

22. Between the time of the Crownpoint physicians' negligence and the time of her death, Annie Morris endured pain, suffering and emotional distress. The value of the

7

pain and suffering Annie Morris underwent between the time of Defendant's negligence and her death is at least $100,000.00.

23. The value of Annie Morris' loss of enjoyment of life is at least $1,000,000.00.

24. The value of Annie Morris' damages, including the enhanced injuries from the medical negligence of Defendant is at least $1,835,159.00.

25. The value of the difference between the original injury and the enhanced injury due to the medical negligence of Defendant is at least $1,585,159.00.

### III.   CONCLUSIONS OF LAW

1. The United States is a proper Defendant in this case pursuant to 28 U.S.C. §2679(A) and (B).

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1346.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1402(B).

4. The law of the place where the injury occurred is the law of the Navajo Nation.

5. All administrative prerequisites for filing this suit set forth under 28 U.S.C. §2675 have been met.

6. Defendant is vicariously liable for the negligence of the agents and employees of Crownpoint Healthcare Facility, including the negligence of Dr. Portnoy, Dr. Reitz, and Dr. Josephs.

7. The Defendant's employees did not possess or apply the knowledge, nor did they use the skill and care ordinarily used by reasonably well-qualified healthcare providers

practicing under similar circumstances, given due consideration to the locality involved.

8. Defendant, its agents and employees, were negligent in their care of Annie Morris on June 18, 1997 in the following respects:

    A. Failing to recognize that Annie Morris needed a chricothyrotomy.

    B. Failing to attempt a surgical airway, including a chricothyrotomy.

    C. Failing to recognize that the endotracheal tube was misplaced, after it was thought to have been placed into the trachea at 3:02 p.m., and not removing the tube until 3:07 p.m.

9. Defendant's negligence as set forth above proximately caused the death of Annie Morris.

10. In the alternative, Defendant's negligence as set forth above proximately caused the loss of the 80% chance of survival that Annie Morris would have had with proper diagnosis and treatment.

11. Under New Mexico law, Plaintiffs are entitled to recover damages for the value of the injuries that were proximately caused by Defendant's negligence. This is an amount equal to the difference between the damages caused by the original injury and the damages for the enhanced injuries to Annie Morris caused by the Defendant's negligence.

12. Under New Mexico law, and in particular, *Lujan v. HealthSouth Rehabilitation Corp.*, 902 P.2d 1025 (NM 1995), and *Lewis v. Samson*, 992 P.2d 282, 293 (NM Ct.App.

1999), the negligence of the Defendant United States of America is successive and not concurrent with any negligence of Federal Express or its agents or employees.

13.     Under *Lujan* and *Lewis*, the United States is liable for the entire enhancement proximately caused by the Defendant's negligence.

14.     Alternatively, under New Mexico law, and in particular, *Alberts v. Schultz*, 975 P.2d 1279 (1999), Plaintiffs are entitled to recover damages in an amount directly proportional to the lost chance of survival for Annie Morris that was the result of the Defendant's negligence which is 80%.

15.     The New Mexico cap on damages under the New Mexico Medical Malpractice Act does not apply in this case. The cap only applies to negligence by a healthcare provider, which is defined as a person, corporation, organization, facility or institution licensed or certified by this state to provide healthcare or professional services as a doctor of medicine, hospital, outpatient healthcare facility, doctor of osteopathy, chiropractor, podiatrist, nurse, anesthesiologist, or physician's assistant. NMSA §41-5-3(A). Plaintiff's claims against the Hospital employees and agents are not capped under the statute.

16.     The New Mexico cap on damages under the New Mexico Medical Malpractice Act does not apply in this case. The law of the Navajo Nation applies as the law of the place where the injury occurred and the Navajo Nation has no medical malpractice cap.

17.     The total amount of damages to be awarded to the Plaintiffs, according to the Findings of Fact set forth above is $1,585,159.00.

18. In the alternative, the total amount of damages to be awarded to Plaintiffs according to the Conclusions of Law set forth above regarding lost chance of survival is $1,585,159.00 less 20% for a total of $1,268,127.20.

19. Judgment shall enter in Plaintiffs' favor in the amount of $1,585,159.00, together with costs as allowed by law. Pursuant to the Local Rules of this Court, Plaintiffs are entitled to submit a costs bill within 30 days of the date of entry of this judgment. Plaintiffs are also entitled to post-judgment interest.

Respectfully submitted,

JOHN S. STIFF & ASSOCIATES, LLC

By _____
John S. Stiff
400 Gold Avenue, SW, Suite 1300W
Albuquerque, NM 87102
(505) 243-5755


ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM & SCHOENBURG, LLP

By _____
Robert R. Rothstein
Post Office Box 8180
1215 Paseo de Peralta
Santa Fe, NM 87504-8180
(505) 988-8004

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served upon the following counsel by facsimile, on the 4th day of August, 2003.

        Phyllis A. Dow, Esq.
        Assistant U.S. Attorney
        P.O. Box 607
        Albuquerque, NM 87103

                                        ROTHSTEIN, DONATELLI, HUGHES,
                                        DAHLSTROM & SCHOENBURG, LLP

S:\Bob\5575\Pleadings\Amended Findings of Facts.wpd

12